UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT GENDELMAN,<br><br>      Plaintiff,<br><br>  v.<br><br>TRACEY J. BLUMENSTEIN;<br>PROFESSIONAL BOAT SALES,<br>SERVICE & STORAGE, LLC; and<br>CIGARETTE RACING TEAM, LLC,<br><br>      Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-6976<br>(JEI)<br><br>**OPINION** |

**APPEARANCES:**

GEOFFREY B. GOMPERS, ESQ.
778 Riverton Road
Moorestown, New Jersey 08057
    Counsel for Plaintiff

JEFFREY R. LESSIN & ASSOCIATES PC
By: Jeffrey R. Lessin, Esq.
1515 Market Street, Suite 714
Philadelphia, Pennsylvania 19102
    Counsel for Plaintiff

HILL RIVKINS LLP
By: Michael D. Wilson, Esq.
45 Broadway, 15th Floor
New York, New York 10006
    Counsel for Defendants Tracey J. Blumenstein and
    Professional Boat Sales, Service & Storage, LLC

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, PC
By: Christopher B. Block, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, New Jersey 07068
    Counsel for Defendant Cigarette Racing Team, LLC

**IRENAS**, Senior District Judge:

On September 19, 2011, Defendant Tracey Blumenstein ("Blumenstein") was operating a 37.5 foot Top Gun Model Cigarette boat (the "Vessel") in Ships Channel in Egg Harbor Township, New Jersey, with passengers Plaintiff Robert Gendelman ("Plaintiff") and non-party Andrew Biddle.  (Cigarette Racing Team LLC's ("Cigarette") Statement of Material Facts Not in Dispute, Dkt. No. 67-4 ("CSOF") ¶ 1; Blumenstein Defs.' Br. Opp. Cigarette's Mot. for Summ. J., Dkt. No. 77 ("Blumenstein Opp. Br.") at 5)  When Blumenstein attempted to make a turn, the Vessel flipped and capsized, and all three individuals were ejected from the Vessel.  (Id.)

Plaintiff sustained injuries and on November 9, 2012, filed a Complaint, Dkt. No. 1 ("Compl.") against Blumenstein and his company Professional Boat Sales, Service & Storage LLC ("PBS") (collectively "Blumenstein Defendants").[1]  In response to discovery that followed,[2] Plaintiff amended his Complaint on August 8, 2013, to add Cigarette, the Vessel's designer and

---

[1] Blumenstein is an employee and sole member of PBS.
[2] Blumenstein Defendants responded to Plaintiff's Interrogatory No. 20 ("Describe, in detail, your version of the accident") on June 24, 2013, as follows: "[Blumenstein] Defendants believe that the rollover was caused by the use of propellors [sic] which were not designed or intended for use on the boat as well as a defect in the steering gear which caused the propellors [sic] to turn at a much higher degree than the operator's input resulting in a sharper turn than intended.  As it was Mr. Gendelman who obtained the propellors [sic], at this time, defendants do not know the make or manufacturer of the propellors [sic]."  (Defs.' Resp. to Pl.'s Int., Dkt. No. 16-1 at 13-14)

manufacturer, as a defendant.  (Pl.'s First Mot. for Leave to
File an Am. Compl., Dkt. No. 16 at ¶¶ 6-10; Amended Complaint,
Dkt. No. 21 ("Am. Compl."))

Plaintiff alleges strict liability and negligence, each
under both state and federal admiralty law, and breach of
warranty against Cigarette.  (Am. Compl. ¶¶ 26-63)  Blumenstein
Defendants also bring cross-claims against Cigarette for strict
liability, negligence, and breach of warranty.  (Defs. Answer
and Cross-Claims, Dkt. No. 26 at 8-13)  Presently before the
Court is Cigarette's Motion for Summary Judgment, Dkt. No. 67
("CMSJ").

Only Blumenstein Defendants filed an opposition brief to
Cigarette's motion ("Blumenstein Opp. Br.").  Plaintiff
represented to the Court during a teleconference on February 24,
2015, and during oral argument on March 2, 2015, that he did not
oppose Cigarette's motion, did not intend to file an opposition
brief, and did not blame Cigarette for Plaintiff's injuries,
emphasizing instead his personal belief that Blumenstein alone
was at fault for the accident.  Plaintiff has since attempted to
join Blumenstein Defendants' opposition to Cigarette's motion
via Letter-Brief dated March 13, 2015, Dkt. No. 99 ("Pl. Ltr.-
Br.").  The Court does not recognize this delayed attempt at
opposition, which contradicts Plaintiff's previous statements,
particularly given that Plaintiff continues to say that he does

not personally believe Blumenstein Defendants' "dubious"
arguments.  (Pl. Ltr.-Br. at 4, 1-2)

During oral argument on March 12, 2015, the Court raised a
question as to the effect of Plaintiff's lack of opposition to
Cigarette's motion:  whether Blumenstein Defendants' opposition
to Cigarette's motion survived if Plaintiff did not also oppose
it, or if Cigarette was instead entitled to an automatic grant
of summary judgment.

In its responsive briefing, Cigarette argues that
Blumenstein Defendants' cross-claims of contribution and
indemnification are derivative of Plaintiff's underlying action
and the Court should therefore dismiss the cross-claims, since
Plaintiff does not oppose Cigarette's motion.  Where a plaintiff
drops his claim against a co-defendant, "it follows that
[plaintiff's] disclaimer of all such damages necessarily
extinguishes all cross-claims that are derivative of those
injuries."  *Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-
SRF, 2014 WL 3542243, at *18 (D. Del. July 16, 2014) (internal
quotation marks and citations omitted).

However, failing to file opposition to a summary judgment
motion is not equivalent to dropping a claim.  "Plaintiffs'
failure to respond is not alone a sufficient basis for the entry
of a summary judgment."  *Muskett v. Certegy Check Servs., Inc.*,
No. CIV. 08-3975 JBS/JS, 2010 WL 2710555, at *3 (D.N.J. July 6,

4

2010) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).  Fed. R. Civ. P. 56(e) requires that a Court determine "even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate[.]'" *Muskett*, 2010 WL 2710555, at *3.  Therefore, the Court must independently evaluate the merits of Cigarette's motion, even without formal opposition from Plaintiff.

As the sole opponents to Cigarette's motion, Blumenstein Defendants now state that the line of inquiry regarding manufacturing or design defects in the boat's steering system was "pursued during discovery but ultimately found to be unavailing." (Blumenstein Opp. Br., Dkt. No. 77 at 7-8, n. 2) The Court therefore dismisses any claims on the basis of manufacturing or design defects, leaving only the claims alleging a failure to warn under theories of negligence and strict liability.[3]

Cigarette moves for summary judgment in its favor upon the claims remaining against it, and for the reasons set forth below, the Court will GRANT Cigarette's motion.

---

[3] The Court includes in its dismissal the non-moving parties' breach of warranty claims, which Blumenstein Defendants do not argue.

## I.   Relevant Facts

This Court's Local Rule 56.1 provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1. *See New Jersey Carpenters Pension Fund v. Hous. Auth. & Urban Dev. Agency of the City of Atl. City*, No. CIV.A. 12-2229 JBS/A, 2014 WL 7205331, at *2 (D.N.J. Dec. 17, 2014). Because Plaintiff has not filed a statement of undisputed material facts, the Court treats facts not disputed between Cigarette and Blumenstein Defendants as undisputed for purposes of Cigarette's motion.

The facts relevant to Blumenstein Defendants' opposition to Cigarette's motion for summary judgment relate to the propellers that Plaintiff and Defendant used on the Vessel. An individual named David Strohminger purchased the Vessel, originally manufactured in 2003 with four-blade Bravo I propellers, and owned it for nearly eight years, apparently without incident. (CSOF ¶¶ 22, 24; CMSJ Hr'g Tr. 11, Apr. 16, 2015, Dkt No. 118) Plaintiff's company Professional Sales, Inc., purchased the Vessel,[4] still equipped with the same four-blade propellers, from Mr. Strohminger on September 6, 2011. (CSOF ¶ 25; CMSJ Hr'g Tr. 3-6). On the morning of the accident, however, Plaintiff

---

[4] Plaintiff owns 51 percent of Professional Sales, Inc., and despite sales paperwork indicating that Andrew Biddle purchased the Vessel (Dkt. No. 69-2 at 4), the parties have clarified that Mr. Biddle found the boat on behalf of Plaintiff's company, and it was Plaintiff's company that purchased it (CMSJ Hr'g Tr. 3-5).

borrowed five-blade propellers from an individual named Lou
Perrone at A to Z Marina.  (Blumenstein Defs.' Statement of
Material Facts Not in Dispute ("BSOF") ¶ 42; Pl. Dep., Dkt. No.
78-1 at 123-128)  The parties cannot recall which individual
replaced the propellers, but they agree that on the day of the
accident, either Plaintiff or Blumenstein physically mounted the
five-blade propellers on the Vessel in place of the original
four-blade ones.  (CSOF 28; BSOF ¶ 28)  There is no dispute that
they changed the propellers in order to increase the speed of
the Vessel.  (BSOF ¶ 42; CMSJ Hr'g Tr. 7)

     After changing the propellers, Plaintiff and Defendant
Blumenstein took the Vessel out on the water, and Plaintiff
drove for approximately 45 minutes without incident.  (CMSJ Hr'g
Tr. 8)  Defendant Blumenstein then took the wheel and the
accident occurred in approximately 50 seconds.  (Id.)
Blumenstein Defendants now point to the five-blade propellers as
the cause of the accident and allege liability against Cigarette
for failing to provide any warnings on the Vessel regarding the
usage of such propellers.  (BSOF ¶ 46)


## II.  Legal Standard

     "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact

7

and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court must
construe all facts and inferences in the light most favorable to
the nonmoving party. *See Pitney Bowes, Inc. v. Hewlett-Packard
Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Boyle v. Allegheny
Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving
party bears the burden of establishing that no genuine issue of
material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S.
317, 322-23 (1986); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271
F.3d 1043, 1046 (Fed Cir. 2001).  A fact is material only if it
will affect the outcome of a lawsuit under the applicable law,
and a dispute of a material fact is genuine if the evidence is
such that a reasonable fact finder could return a verdict for
the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477
U.S. 249, 252 (1986).  The court's role in deciding the merits
of a summary judgment motion is to determine whether there is a
genuine issue for trial, not to determine the credibility of the
evidence or the truth of the matter. *Id.*  However, "[t]he mere
existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient" to deny a defendant
summary judgment; "there must be evidence on which the jury
could reasonably find for the plaintiff." *Id.*

8

### III. Jurisdiction

The parties agree that this Court has jurisdiction over this matter, but the basis for that jurisdiction is in dispute at this time. *See* Defs.' Ltr. dated February 12, 2015, Dkt. No. 89. Plaintiff originally claimed diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) on the grounds that Plaintiff is a resident of Pennsylvania, Defendants Blumenstein and PBS are residents of New Jersey, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 2-8)

When Defendant Blumenstein represented to the Court that his residence is actually in Pennsylvania thereby defeating diversity, Plaintiff refiled an amended Complaint claiming jurisdiction instead on the basis of admiralty pursuant to 28 U.S.C. § 1333, as the accident occurred on interstate navigable waters. (Pl. Second Mot. for Leave to Amend Compl., Dkt. No. 86 ¶¶ 15-17; Am. Compl., Dkt. No. 21 ¶ 2) Plaintiff has since contended that Defendant Blumenstein is in fact a resident of New Jersey, contrary to his representations to the Court, and now seeks to amend his Complaint once again to claim jurisdiction on the basis of diversity. *See* Pl. Second Mot. for Leave to Amend Compl., Dkt. No. 86. The Court is in the process of conducting fact-finding on this matter. (*See* Order Scheduling Discovery Regarding Citizenship of Defendant Blumenstein, Dkt. No. 95)

Relevant to the instant motion, Blumenstein Defendants have argued that maritime law should govern rather than state products liability law.  But "[a]bsent a controlling statute, maritime law is 'developed by the judiciary' and is an 'amalgam of traditional common-law rules, modifications of those rules, and newly created rules.'"  *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 (E.D. Pa. 2012) (*quoting E. River Steamship*, 476 U.S. 858, 864-65 (1986).  Within the context of a products liability case, a court may therefore "examine the development of products-liability law[] under both admiralty and state common law."  *Id.*

For purposes of the motion at bar, therefore, the Court finds that there is no relevant conflict between state and maritime law.

### IV.  Discussion

Under New Jersey law, a manufacturer shall be liable for failure to warn "if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . failed to contain adequate warnings or instructions[.]"  N.J.S.A. § 2A:58C(2).  A plaintiff must show that defendant had a duty to warn, breached that duty, and that the breach caused plaintiff's damages.  *See James v. Bessemer*

10

*Processing Co.*, 155 N.J. 279, 714 A.2d 898 (1998) (internal citation omitted).

Here, there is a genuine dispute of fact regarding breach. Plaintiff stated that Cigarette represented in an interrogatory response that it had not provided any warnings regarding the propellers.  (CMSJ Hr'g Tr. 10)  The parties agree, however, that the previous owner likely received an instruction manual with the Vessel, though the parties are unable to establish whether such a manual included a warning not to use five-blade propellers or an instruction on how to mount them if they were used.  (Id. at 9-10)  Cigarette represented that the manual, with or without such a warning, was on the Vessel at the time of the accident, but Plaintiff indicated that the manual "disappeared" after the accident and was not found when the boat was salvaged.  (Id. at 9-10, 38-39)  The Court recognizes therefore that there is a genuine dispute of fact regarding the content of these manuals, and whether or not they were on board the Vessel when Plaintiff's company purchased it and on the date of the accident.

However, these factual disputes regarding the element of breach are not material, because even viewed in the light most favorable to the non-moving parties, Cigarette has established that no genuine issues of material fact remain regarding the elements of duty and causation.

11

### a. Duty to Warn

"In a failure-to-warn case, 'the duty to warn is premised on the notion that a product is defective absent an adequate warning for foreseeable users that 'the product can potentially cause injury.'" *Lopez v. Borough of Sayreville*, No. A-0158-06T5, 2008 WL 2663423, at *15 (N.J. Super. Ct. App. Div. July 9, 2008) (*quoting Clark v. Safety–Kleen Corp.*, 179 N.J. 318, 336, 845 A.2d 587 (2004)). "The manufacturer of a product has a duty to warn about any risk relating to the product that it knows or ought to know, *Feldman v. Lederle Labs.*, 97 N.J. 429, 434, 479 A.2d 374 (1984), unless the risk and the way to avoid it are obvious." *Id.* (additional citation omitted).

This knowledge requirement applies to both negligence and strict liability cases. A negligence action lies for failure to warn "only when the seller knew of the product[']s dangerous propensities and had reason to know that the buyer would not realize the product's menacing propensities." *Delta Marine, Inc. v. Whaley*, 813 F. Supp. 414, 418 (E.D.N.C. 1993). A strict liability action typically does not require such knowledge, but Comment j to Section 402A of the Restatement (Second) of Torts (1965)[5] provides that strict liability based on a failure to warn

---

[5] Section 402A, which governs the doctrine of strict products liability, provides that "[a] manufacturer is liable for harm caused by a product sold in a defective condition unreasonably dangerous," and a product that provides inadequate instructions or warnings at the time of sale or distribution qualifies as defective, *Restatement* (Third) of Torts: Prods. Liab. § 2

(as opposed to a manufacturing or design defect), "considers sellers liable for failure to give an adequate warning only when the seller knew or should have known of the danger." *Delta Marine*, 813 F. Supp. at 418. "Under this standard negligence and strict liability in warning cases may be deemed to be functional equivalents."[6] *Feldman*, 97 N.J. at 452.

In order to establish a duty to warn in the instant matter, the non-moving parties must show that the evidence presented, viewed in the light most favorable to themselves, supports their assertions that the use of five-blade propellers was dangerous on a Top Gun boat such as the Vessel; that Cigarette knew or should have known of that danger; and that the use of such five-blade propellers was foreseeable to Cigarette.

First, there is a genuine dispute of material fact as to whether five-blade propellers are in fact dangerous or harmful on a Top Gun boat. Blumenstein Defendants' expert[7] argues that

---

(1998). *See also Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796-97 (E.D. Pa. 2012).

[6] The Court notes that under strict liability, "knowledge of the harmful effects of a product will be imputed to a manufacturer on a showing that knowledge of the defect existed within the relevant industry;" in contrast, under a negligence theory, "the plaintiff must demonstrate that the specific defendant knew or should have known of the potential hazards of the product." *James*, 155 N.J. at 298 (internal citation omitted). Here, the non-moving parties have not attempted to argue that five-blade propellers are known in the industry to be harmful on boats such as the Vessel. The Court therefore treats the strict liability and negligence claims against Cigarette as functionally equivalent.

[7] Plaintiff has moved to exclude Blumenstein Defendants' expert on the grounds that Mr. Martin "lacks the requisite qualifications and the opinions expressed in his report are mere speculation." (Pl. Mot. to Exclude Blumenstein Defs.' Expert, Dkt. No. 71 at 9) The Court finds that Mr.

the five-blade propellers create "transom lift" unbalancing the boat and "creating a problem for directional change." (Martin Rep., Dkt. No. 71-1 at 6)  Cigarette's representative Bud Lerow appears to support this argument by agreeing that a five-blade propeller would create more transom lift, meaning the back of the boat would rise, and the nose of the boat would be pushed down into the water, where "[t]he water wants to push it around." (Lerow Dep. at 103-106)  Plaintiff's expert, however, opines that transom lift "is not directly influenced by a propeller's blade count" at all but rather "is caused by non-axial oblique flow or a difference in the velocity, direction, or state of the water in the distance from the top to the bottom of the propeller." (MacPherson Rep., Dkt. No. 71-3 at 5)  The Court therefore assumes for purposes of this motion that a reasonable jury could find that the use of the five-blade propellers was dangerous.

The Court therefore reaches the question of whether Cigarette knew or should have known of such danger.  To make this claim regarding Cigarette's knowledge, Blumenstein Defendants rely on the testimony of Cigarette representative Bud

---

Martin's extensive experience racing and testing boats such as the Cigarette qualify him an expert on their handling with regard to various propellers. (Blumenstein Defs.' Opp. to Pl.'s Mot. to Exclude Expert, Dkt. No. 76 at 6)  The Court also finds that Plaintiff's objections to Mr. Martin's methodology and the definitiveness of his opinions are appropriate issues to raise through cross-examination, rather than exclusion.  The Court will therefore DENY Plaintiff's motion.

Lerow, which referred to the fact that Cigarette tested and
rejected five-blade propellers for Top Gun boats such as the
Vessel.  (Blumenstein Opp. Br. 11-12)

Cigarette representative Bud Lerow testified that Cigarette
would not recommend running anything bigger than a four-blade
propeller on the Vessel, because a five-blade propeller would
create more transom lift, meaning the back of the boat would
rise, and the nose of the boat would be pushed down into the
water, where "[t]he water wants to push it around."  (Lerow Dep.
at 103-106)  Mr. Lerow added that Cigarette had tested five-
blade propellers on a boat like the Vessel and "didn't like the
way [the 38' boats] handled with five blades."  (Id. at 106: 3-
4)  Mr. Lerow also testified that if five-blade propellers were
to be put on the Vessel, he would have had them mounted higher
than where four-blade propellers are mounted and he would have
them turn inboard, so that the nose would pick up rather than be
pushed down.  (Id. at 106: 9-11; 109: 14-24)

Nonetheless, as the standard makes clear, the non-moving
parties must show that Cigarette knew or should have known of
the "danger" or the "harmful effects" of the product.  The fact
that Cigarette "didn't like the way [the 38' boats] handled with
five blades" does not establish that Cigarette understood the
five-blade propellers to be *dangerous* on boats like the Vessel.
As Blumenstein himself stated with regard to the propellers, "I

15

never said there was any danger. The boat may handle differently, yes, but just because you change a set of props don't [sic] mean you're going to get into a boat accident." (Blumenstein Dep. Tr. 201:3-6)

Similarly, Blumenstein Defendants attempt to suggest that Cigarette's testing and rejection of the five-blade propellers imposed on Cigarette a duty to warn against their use. But a manufacturer is not required to warn users against alternatives that they try and reject, unless safety concerns are implicated. The Court will not presume that a preference for a particular propeller and a certain type of handling during testing reflects a suspicion that any rejected alternative is hazardous to users.

Finally, even if the Court were to accept that the five-blade propellers were dangerous on boats such as the Vessel and that Cigarette was aware of that danger, "[t]he plaintiff in a product defect case also has the burden of showing that the product was not misused or, if it was, that the misuse was objectively foreseeable." *London v. Lederle Labs., Div. of Am. Cyanamid Co.*, 290 N.J. Super. 318, 27, 675 A.2d 1133, 1138 (App. Div. 1996) *aff'd as modified sub nom. Batson v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 152 N.J. 14, 702 A.2d 471 (1997). The foreseeability of the misuse of a product generally cannot be determined as a matter of law and is left instead to a jury unless "the inferences are so clear that a court can say as a

matter of law that a reasonable manufacturer could not have foreseen the change." *Port Auth. of New York & New Jersey v. Arcadian Corp.*, 991 F. Supp. 390, 401 (D.N.J. 1997) aff'd, 189 F.3d 305 (3d Cir. 1999).

Here, Blumenstein Defendants argue that the non-moving parties' replacement of the four-blade propellers with five-blade ones was foreseeable, because Cigarette tested the 38' Top Gun with five-blade propellers and rejected them, among other types of propellers. (Defs.' Opp. Br. at 13)  Again, such evidence about product testing while choosing a default installment indicates nothing about whether Cigarette expected its customers to change its products once purchased.  The non-moving parties offer no evidence that Cigarette's customers routinely experimented with propeller changes or other comparable alterations.

Because no rational jury could find from the evidence that it was foreseeable to Cigarette that its customers would use five-blade propellers, even if the jury could find that the propellers were dangerous and that Cigarette was aware of the danger, the Court finds that Cigarette had no duty to warn Plaintiff and Blumenstein regarding five-blade propellers.

### b. Causation

In addition, the non-moving parties have failed to provide evidence from which a rational jury could find causation.

"Causation is a fundamental requisite for establishing any product-liability action." *Coffman v. Keene Corp.*, 133 N.J. 581, 594, 628 A.2d 710, 716 (1993).  In failure-to-warn cases, "a plaintiff is required to prove that the absence of a warning was a proximate cause of his harm." *Id.*  "Ordinarily, the jury considers issues of proximate cause . . . [but] courts may resolve for themselves the question of legal or proximate causation if they conclude that no reasonable jury could find such causation on the record presented." *Shelcusky v. Garjulio*, 172 N.J. 185, 206, 797 A.2d 138, 151-52 (2002).

In New Jersey, courts apply a "heeding presumption" that plaintiff "would have followed an adequate warning had one been provided." *James*, 155 N.J. at 297 (*quoting Coffman*, 133 N.J. at 603).  This presumption is rebuttable, however, if a defendant can offer evidence concerning the plaintiff's knowledge of the risk that the absent warning was supposed to address.

> If the user of a product knows at the moment of use the very danger of which a warning would have apprised him, but chooses to disregard that conscious knowledge, then the presence or absence of the warning is irrelevant. *Vallillo v. Muskin Corp.,* 212 N.J.Super. 155, 159-60 (N.J.Super.A.D., 1986).  There is 'no need to warn one of a danger he already knows.' *McGrath v. American Cyanamid Co.,* 41 N.J. 272, 275 (1963).

*Leja v. Schcmidt Mfg., Inc.*, No. CIV. 01-5042DRD, 2008 WL 906252, at *4 (D.N.J. Mar. 31, 2008).

Here, the non-moving parties must first offer evidence from which a rational jury could conclude that the five-blade propellers themselves were a proximate cause of the accident. As discussed during oral argument, the parties did not and cannot reasonably dispute that any flat-bottom boat such as the Vessel would capsize if turned suddenly at a sufficiently high rate of speed, regardless of what propellers were attached. (CMSJ Hr'g Tr. 42-44)[8]  Though the speed at the time of the accident is disputed, Blumenstein drove the Vessel for less than one minute prior to the accident, and during that minute, took the Vessel to a disputed high speed and, slowed down a disputed amount, and attempted to make a turn, at which time the Vessel capsized and the accident occurred.  (CSOF ¶ 3)

Blumenstein Defendants now claim that the five-bladed propellers proximately caused the accident by unbalancing the boat during the turn.  To support this statement, they claim that their expert Tres Martin "explained that the five bladed propellers and their transom lifting effect created an unbalanced boat which resulted in a loss of control during the turn and played a major role in the accident."  (BSOF ¶ 47)

---

[8] To the extent propellers contributed to the Vessel's speed, no one has argued that the Vessel crashed at a rate of speed that it would not have been able to achieve with standard-issue four-blade propellers.

This summary overstates Mr. Martin's opinion.  Mr. Martin's report states generally, among other things, that "[w]ith a five-bladed propeller this boat can encounter control loss even with an experienced driver operating competently." (Martin Rep. at 4)  However, he offers no opinion in his report regarding the cause of this accident in particular.  During his deposition, in response to the question, "Do you have an opinion as to what caused the accident?"  Mr. Martin stated only possibilities:  "A couple contributors.  Possibly speed.  Possibly the five-blade props.  Possibly water conditions as well." (Martin Tr. 140:15-19, Dkt. No. 71-2)  When asked if driver error played a role, he stated, "It's possible" due to "[t]rim position" or "too much of a hard turn." (Id. at 141, ll. 3-8)  He also affirmed that "if . . . this boat had four blades, propellers, the accident still could have happened[.]"  (Id. at 139:6-10)  No rational juror could conclude from this testimony that the propellers "played a major role in the accident" at issue.

Nonetheless, in drawing all inferences in favor of non-moving parties, the Court accepts that a rational juror could conclude that the five-blade propellers contributed in some way to the accident.  It is yet another leap from there, however, to show that Cigarette's failure to warn about the propellers proximately caused their use on the date of the accident.

Because the non-moving parties are entitled to the heeding presumption, the Court presumes that Plaintiff and Defendant Blumenstein would have followed a warning regarding the propellers, if such warning had been provided.  To rebut this presumption, Cigarette provides evidence that the non-moving parties had "knowledge of the risk that the absent warning was supposed to address."  Blumenstein, the operator of the Vessel during the accident, not only has over thirty years of experience in boating and considers himself an expert in the handling of boats in general (Blumenstein Dep. Tr. 211: 19-25), he specifically testified that it was his practice to warn customers for whom he was changing propellers that such a change could affect steering (Id. at 198: 10-13).  On the date of the accident, he took no additional precautions to ensure the safety of the new propellers, because he was planning to operate the boat himself: "I wouldn't warn myself.  I would operate the boat and find out."  (Id. at 198: 14-24)  Blumenstein further states that he did not warn Plaintiff, because Plaintiff "was a partner in the boat" who Blumenstein knew "had owned boats previous to this, operated boats" and who Blumenstein "assumed . . . was knowledgeable himself."  (Id. at 218: 2-18)

The Court finds this evidence sufficient to rebut the heeding presumption.  Plaintiff and Defendant Blumenstein already knew that changing the propellers would affect the

21

Vessel's handling, and additional warnings about handling would have been redundant.  Having lost the benefit of the presumption, Blumenstein does not argue at any point that he would have done anything differently had Cigarette provided a warning regarding the five-blade propellers, such that a warning not to use them may have prevented Plaintiff's damages.  Given that there is no dispute that Defendant Blumenstein was already aware of the information that Cigarette's warnings would have provided, the Court finds that no reasonable jury could find causation on the record presented.

## V.   Conclusion

Cigarette has demonstrated that no genuine issues of material fact remain, and no rational juror could conclude from the evidence presented that Cigarette had a duty to warn Plaintiff and Blumenstein or that its failure to do so proximately caused Plaintiff's damages.  The Court will therefore grant Cigarette's motion for summary judgment and dismiss Blumenstein Defendants' cross-claims.  An appropriate Order accompanies this Opinion.


Date: 6-2-2015


                            s/ Joseph E. Irenas
                            **JOSEPH E. IRENAS, S.U.S.D.J.**